**NOT FOR CITATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM HORTON, | |
| Plaintiff, | No. C 08-02251 JSW |
| v. | **ORDER ON MOTION TO DETERMINE PROPER STANDARD OF REVIEW AND FOR DISCOVERY AND ORDER OF REFERRAL** |
| LIBERTY LIFE ASSURANCE COMPANY OF BOSTON AS ADMINISTRATOR AND FIDUCIARY OF THE ALLSTATE CAFETERIA PLAN and THE ALLSTATE CAFETERIA PLAN, | |
| Defendants. | |

**INTRODUCTION**

Now before the Court for consideration is the Motion to Determine Proper Standard of Review and for Discovery filed by Plaintiff, William Horton ("Horton"). Having considered the parties' papers, relevant legal authority, and the record in this case, the Court finds the matter suitable for disposition without oral argument and VACATES the hearing set for November 14, 2008. *See* N.D. Civ. L.R. 7-1(b).

In his motion, Horton moves for summary adjudication on the issue of the proper standard of review. Horton also seeks discovery from Liberty, in the event the Court determines that an abuse of discretion standard is the appropriate standard of review. The Court GRANTS IN PART AND DENIES IN PART Horton's motion.

**BACKGROUND**

Horton worked as a Field Property Adjuster for Allstate Insurance Company ("Allstate") until approximately May 26, 2006. (Declaration of Paula McGee ("McGee Decl."), Ex. B at CF-000404, CF-000532.) Prior to that date, Horton applied for disability benefits in connection with hip replacement surgery, which was scheduled for May 30, 2006. (*See* McGee Decl., Ex. B at CF-000007, CF-000523, CF-000526.)

Allstate provided insurance to its employees, including long term disability insurance, through the Allstate Cafeteria Plan (the "Cafeteria Plan"). (*See* Declaration of Pamela Cogan, Ex. A (Allstate Insurance Company Consolidated Plan Document for the Cafeteria Plan and Certain Welfare Benefit Plans (hereinafter "Master Plan")), Ex. B (Summary Plan Description (hereinafter "SPD")).) Allstate is the Cafeteria Plan Administrator.

Under the Cafeteria Plan, long term disability insurance is provided through an insurance policy issued by Defendant Liberty Life Assurance Company of Boston ("Liberty"). (*See* SPD at 10; Liberty Answer ¶ 5).) Liberty is both the insurer and the Claims Administrator for long term disability claims.[1] (Liberty Answer ¶ 6.) The Master Plan states that, "[t]o the extent that a trust agreement or insurance contract funds part or all of the benefits provided by a particular Plan, such agreement or contract shall be deemed part of this Plan Document and incorporated herein by this reference." (Master Plan § 4.01.)[2] The Master Plan also provides that "[i]n the event of any inconsistency between the SPD booklet and the specific provisions of this Plan Document or other contracts maintained in conjunction with the Plans, this Plan Document or other contract shall govern." (*Id.* § 1.06.)

Liberty initially approved Horton's claim. However, on April 26, 2007, Liberty sent Horton a letter advising him that "benefits are no longer payable," because he no longer met the policy's definition of disability. Liberty terminated Horton's claim for benefits as of April 25,

---

[1] "Claims Administrator" means "an Insurance Company or other party that has contracted with an Employer to provide administrative services to a Plan and is responsible for determining whether a particular claim is covered by such a Plan." (Master Plan § 2.08.)

[2] In order to distinguish the long term disability insurance plan from the Cafeteria Plan as a whole, the Court shall refer to the Master Plan, the SPD and the long term disability insurance policy collectively as "the LTD Plan."

2

2007.  (McGee Decl., Ex. B at CF-000323-326.)  After an initial request for an extension of time was granted, Horton appealed the claim on November 19, 2007.  (Declaration of Scott Kalkin, ¶ 3; Pl. Ex. 2.)  On December 6, 2007, Liberty acknowledged receipt of the appeal and advised Horton that it would make a decision within 45 days, unless special circumstances required a delay.  (*Id.*, ¶ 4; Pl. Ex. 3.)

On December 12, 2007, Liberty sent a letter to Horton in which it stated that his "file [had] been referred for further medical review and assessment.  At this time we anticipate a response to our medical referral by January 18, 2008.  If there is a delay beyond this time frame, we will contact you."  (*Id.* ¶ 5, Pl. Ex. 4.)  On January 21, 2008, Liberty sent Horton another letter, in which it advised him that it had referred his file for a vocational review and that it anticipated a response to that referral by January 30, 2008.  (*Id.*, ¶ 8, Pl. Ex. 7.)  On January 30, 2008, Liberty denied Horton's appeal.  (*Id.* ¶ 10; Pl. Ex. 9.)

The Court shall address additional facts as necessary in the remainder of this Order.

## ANALYSIS

**A.   Legal Standards on Motions for Summary Adjudication.**

Summary adjudication is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  A fact is "material" if the fact may affect the outcome of the case. *Id.* at 248.  "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party."  *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

//
//
//

**B.     The Court Shall Apply the Abuse of Discretion Standard of Review.**

Plaintiff argues that the Court should review the denial of his benefits *de novo* because: (1) the terms of the LTD Plan do not unambiguously confer discretion upon Liberty; and (2) because Liberty did not render a decision within 45 days of receiving his appeal.

**1.     General Principles Applicable to Standard of Review in ERISA Cases.**

Absent a discretionary clause, the default standard of review of a claims determination in an ERISA policy is *de novo*. *Metropolitan Life Ins. Co. v. Glenn*, __ U.S. __, 128 S.Ct. 2343, 2348 (2008); *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1089 (9th Cir. 1999). Where there is a proper grant of discretion, the deferential abuse of discretion standard is triggered. *Glenn*, 128 S.Ct. at 2348; *Abatie v. Alta Health and Life Ins. Co.*, 458 F.3d 955, 963-64 (9th Cir. 2006). Further, "[i]f a benefit plan gives discretion to an administrator or fiduciary who is *operating under a conflict of interest*, that conflict must be *weighed as a factor* in determining whether there is an abuse of discretion." *Glenn*, 128 S.Ct. at 2348 (emphasis in original, internal quotations omitted).

When a plan confers discretion on an administrator, if the plan administrator fails to comply with procedural requirements, that failure may, in some instances, warrant *de novo* review. *See, e.g., Abatie*, 458 F. 3d at 972; *Gatti v. Reliance Standard Ins. Co.*, 415 F.3d 978, 984-85 (9th Cir. 2005). In the Ninth Circuit, "'procedural violations of ERISA do not alter the standard of review [from abuse of discretion review to de novo review] unless the violations are so flagrant as to alter the substantive relationship between the employer and employee, thereby causing the beneficiary substantive harm.'" *Abatie*, 458 F.3d at 971 (quoting *Gatti*, 415 F.3d at 985).

**2.     The LTD Plan Unambiguously Confers Discretion on Liberty.**

Horton argues that *de novo* review is the proper standard of review, because the LTD Plan does not unambiguously confer discretion on Liberty. It is undisputed that Allstate is the Cafeteria Plan Administrator. The Master Plan provides that "the [Cafeteria] Plan Administrator shall have the following express authorities: ... [t]o construe and interpret the Plans, decide all questions of fact, decide all questions of eligibility and determine the amount,

4

1 manner and time of payment of any benefits hereunder, all in the sole discretion of such
2 decision-maker, provided that the Plan Administrator may delegate to the Claims Administrator
3 the right to make the initial determination as to all such factual and other questions." (Master
4 Plan § 8.02(b); *see also* SPD at SPD-007.)[3] This type of language is the type of language that
5 the Ninth Circuit has held confers discretion upon a plan administrator. *See Abatie*, 458 F.3d at
6 963-65 (holding that there are no "magic" words that conjure up discretion on the part of the
7 plan administrator, but the granting of the power to interpret plan terms and to make final
8 benefits determinations confers discretion on the plan administrator).

9 The Master Plan also provides, however, that "the [Cafeteria] Plan Administrator may,
10 in its discretion, delegate authority with respect to the administration of the Plans to any
11 individual, officer or committee in accordance with paragraph (e) below." (Master Plan § 8.02.)
12 Section 802, paragraph (e) grants the Cafeteria Plan Administrator the authority "[t]o allocate
13 and delegate its responsibilities under the Plans and to designate other persons from time to
14 time to carry out any of its responsibilities under the Plans[.]" (*Id.* § 8.02(e); *see also* SPD at
15 SPD-007.)

16 The SPD provides that for "benefit plans or coverages that provide benefits through
17 insurance contracts, the powers, duties, and responsibilities described above, *including the*
18 *responsibility for full and fair review of denials pursuant to Section 503 of ERISA, generally*
19 *reside with the insurer*, except that the [Cafeteria] Plan Administrator continues to have the sole
20 and absolute discretion to determine eligibility under the terms of the Cafeteria Plan." (SPD at
21 SPD-008 (emphasis added).) The SPD also contains a summary of the LTD Plan and, in the
22 section entitled "Appealing Denial of Claims," the SPD states that the "[d]ecisions of Liberty
23 Mutual are final." (SPD at SPD-067; *see also id.* ("No claimant ... or claimant's representative
24 may file or commence any lawsuit or legal action (under § 502 of ERISA or otherwise) to
25 obtain any LTD Insurance Plan benefits under the Allstate Cafeteria Plan, without first having
26 complied with and exhausted all levels of appeal required by the LTD Insurance Plan, and in

---

[3] For ease of reference, the Court cites to Bates numbered pages when it refers to specific pages within the SPD.

5

any event not less than 60 calendar days or more than three years and 90 calendar days *after the final appeal is denied by Liberty Mutual.*") (emphasis added).)

The LTD insurance policy, in turn, provides that "Liberty shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder. Liberty's decisions regarding the construction of the terms of this policy and benefit eligibility shall be conclusive and binding." (McGee Decl., Ex. A (Group Disability Income Policy at P-000036).) Again, under *Abatie*, this type of language is sufficient to confer discretion upon Liberty. *Abatie*, 458 F.3d at 963-65.

Horton notes that the Master Plan states that Allstate has the right, as Cafeteria Plan Administrator, to interpret the LTD Plan and to make final determinations of eligibility. Horton also notes that the LTD insurance policy also purports to give Liberty that right. According to Horton, this inconsistency demonstrates that the LTD Plan does not unambiguously confer discretion upon Liberty. Liberty responds that there is no ambiguity because Allstate delegated its discretionary authority to Liberty. Horton has not disputed that the Master Plan expressly permits Allstate to delegate its responsibilities as Cafeteria Plan Administrator to others, including insurers. Further, it is undisputed that the SPD explains that, in general, when benefit plans provide coverage through insurance contracts, Allstate has delegated the "responsibility for full and fair review of denials pursuant to Section 503 of ERISA," to the insurer. (SPD at SPD-008.

In further support of his argument, Horton notes that the SPD also states that Allstate has "the sole and absolute discretion to determine eligibility under the terms of the Cafeteria Plan." (*Id.*) Liberty contends that this statement refers to the fact that Allstate has the sole discretion to determine whether a person is eligible to participate in the Cafeteria Plan, not whether he or she is entitled to benefits under the LTD Plan. In light of the express and specific reference to the "Cafeteria Plan," rather than a general reference to a "Plan" or "Plans," the Court concurs with Liberty. (*See, e.g.,* Master Plan §§ 1.02 (noting that "Plans" refers collectively to the Welfare Benefit Plans and the Cafeteria Plan), 1.03 (defined term "Welfare Benefit Plans" includes the underlying plans to the Cafeteria Plan but does not include the

6

1  Cafeteria Plan"); 2.35 (defining "Plan" or "Plans" to mean "the Cafeteria Plan and the Welfare

2  Benefit Plans either collectively or individually depending on the context").) The Court's

3  conclusion is reinforced by the statements in the SPD that Liberty's decisions are final.

4      Accordingly, the Court finds that Allstate properly, clearly and unambiguously

5  delegated its discretionary authority to Liberty to construe and interpret the LTD Plan and to

6  decide all questions of eligibility and amount and payment of any LTD Plan benefits. *See, e.g.,*

7  *Abatie*, 458 F. 3d at 963-64. Horton's motion is denied, in part, on this basis.

**2. The Alleged Procedural Violation Does Not Give Rise to Application of the *De Novo* Standard of Review.**

10      Horton also claims that a *de novo* standard of review applies, because Liberty violated

11  29 C.F.R. § 2560.503-1 and provisions of the SPD. Section 2560.503-1 provides that, for

12  disability claims:

> the plan administrator shall notify a claimant in accordance with paragraph (j) of this section of the plan's benefit determination on review within a reasonable period of time, but not later than [45] days after receipt of the claimant's request for review by the plan, unless the plan administrator determines that special circumstances (such as the need to hold a hearing, if the plan's procedures provide for a hearing) require an extension of time for processing the claim. If the plan administrator determines that an extension of time for processing is required, written notice of the extension shall be furnished to the claimant prior to the termination of the initial [45-day] period. In no event shall such extension exceed a period of [45] days from the end of the initial period. The extension notice shall indicate the special circumstances requiring an extension of time and the date by which the plan expects to render the determination on review.

20  29 C.F.R. § 2560.503-1(i)(1)(i) and (i)(3)(i).

21      The SPD also states that Liberty will notify a claimant of "its decision no more than 45

22  calendar days after [an] appeal is received. However, the time period for notice of decision may

23  be extended for one additional 45-calendar-day period provided that, prior to the extension,

24  Liberty Mutual notifies [the claimant] in writing that an extension is necessary due to special

25  circumstances, identifies those circumstances and gives the date by which it expects to render a

26  decision." (SPD at SPD-066.)

27      Liberty admits that it did not decide Horton's appeal within the initial 45 day period. It

28  argues, however, that special circumstances existed and that it advised Horton of that fact. In

support of his argument, Horton relies on *Jebian v. Hewlett Packard Co. Employee Benefits Org. Income Protection Plan*, 349 F.3d 1098 (9th Cir. 2003). In the *Jebian* case, the plan provided that a "'claim shall be deemed denied on review' if VPA neither responds within sixty days nor informs the claimant that it could take up to sixty days longer to respond." *Id.*, 349 F.3d at 1102. The plan administrator did not respond to the appeal until 119 days after it received the appeal. *Id.* Thus, under the express terms of the plan, the claim was deemed denied, because the plan administrator neither responded to the plaintiff within the required sixty days nor advised him within in that initial sixty day window that it would require an additional sixty days to resolve the appeal. *Id.* at 1103-04, 1107. Moreover, the plan did not render a final decision within that 120 day period, as required by the plan and by the federal regulations. *Id.*

The Ninth Circuit reasoned that a *de novo* standard of review was appropriate because, in such a situation, "there is no opportunity for the exercise of discretion." *Id.* at 1103. The court also concluded that, because the administrator did not respond to plaintiff until the 119th day, the court could not conclude that the plan administrator made good faith effort to comply with the requisite deadlines. *Id.* at 1104, 1107-08. Thus, although the court acknowledged that "deference may be due to a plan administrator that is engaged in a good faith attempt to comply with its deadlines when they lapse," it concluded hat "this is not such a case." *Id.* at 1103, *see also. id.* at 1107.

This case can be distinguished from the *Jebian* case in three respects. First, unlike the plan at issue in *Jebian*, neither the LTD insurance policy nor the SPD contain "deemed denied" language. Second, Liberty advised Horton on December 12, 2007, within the initial 45 day period required by both the SPD and Section 2560-503.1(i)(3)(i), that it required additional time to resolve the appeal, why it required additional time, and when it expected to render a decision. (Kalkin Decl., ¶ 5, Pl. Ex. 4.) On January 21, 2008, Liberty once again informed Horton that it required additional time, why it required that time, and when it expected to render a decision. (*Id.*, ¶ 8, Pl. Ex. 7.) Finally, unlike the plan administrator in *Jebian,* Liberty issued its final decision within 90 days after it received Horton's appeal.

8

At best the record shows a possible minor procedural violation, in that Liberty did not specifically identify the reasons it required an extension as "special circumstances." In *Abatie*, by contrast, the insurer "tack[ed] on a new reason for denying benefits" in its final decision, which precluded the plan participant "from responding to that rationale for denial at the administrative level." *Abatie*, 458 F.3d at 974. The Ninth Circuit noted that such conduct effectively insulated that rationale from review. Thus, the procedural violation was one that justified *de novo* review. *Id.*

Horton argues that the reasons Liberty proffered as the basis for extending the time in which it would resolve the appeal do not qualify as special circumstances. However, at least one district court has concluded that the need for an independent medical review justified rendering a decision beyond the 45 day period. *See Rodden v. John Hancock Financial Services, Inc. Employee Welfare Plan*, 2008 U.S. Dist. 34613 at *12 (W.D. Okl. April 28, 2008). In addition, the record discloses that Horton submitted additional materials with his appeal, which also may justify the additional time that Liberty required to render a decision. *See, e.g., Peck v. Aetna Life Ins. Co.*, 2007 U.S. Dist. LEXIS 40031 at *14 (D. Conn. June 1, 2007).

Accordingly, the Court concludes that, taking the facts in the light most favorable to Horton, Liberty's failure to resolve the appeal within the initial 45 days was not a complete abdication of the discretion Liberty was afforded under the terms of the LTD Plan. In addition, the Court concludes that, even if Liberty failed to comply strictly with the requirements of 29 C.F.R. § 2560.503-1(i)(3)(i), or with the requirements of the SPD, the alleged procedural violation was not so flagrant as to warrant application of the *de novo* standard of review.[4]

However, "[a] procedural irregularity like a conflict of interest, is a matter to be weighed in deciding whether an administrator's decision was an abuse of discretion. *Abatie,* 458 F.3d at 972. Because Horton has not suggested that the alleged procedural violation "prevented full development of the administrative record," the Court shall not consider any evidence outside

---

[4] Moreover, Horton does not suggest that he was substantively harmed by Liberty's need for additional time. *Abatie*, 458 F.3d at 971; *Gatti*, 415 F.3d at 985.

9

the record on this issue. *Abatie*, 458 F.3d at 973 (noting that a court may consider evidence outside the record to "recreate what the administrative record would have been had the procedure been correct"). The Court expresses no opinion on the weight to be afforded the alleged procedural violation, and the parties shall be free address that issue in any motion or trial on the merits of this case. *Id.* at 972. Horton's motion is denied, in part, on this basis as well.

### C. Horton Is Entitled to Discovery on The Alleged Conflict.

Having determined that it will apply an abuse of discretion standard of review, the Court turns to Horton's request for discovery. Liberty admits that a structural conflict exists. *See Abatie*, 458 F.3d at 965 ("an insurer that acts both as the plan administrator and the funding source for the plan operates under what may be termed a structural conflict of interest"). Under *Glenn* and *Abatie*, a court must consider a conflict of interest as a factor to be weighed in abuse of discretion review. *Glenn*, 128 S.Ct. at 2350-52; *Abatie*, 458 F.3d at 970. In *Abatie*, the court also addressed the question whether the court may consider evidence outside the record, to evaluate how much weight the conflict should be given. *Abatie*, 458 F.3d at 970 ("The district court may, in its discretion, consider evidence outside the administrative record to decide the nature, extent, and effect on the decision-making process of any conflict of interest; the decision on the merits, though, must rest on the administrative record once the conflict (if any) has been established by extrinsic evidence or otherwise."); *see also Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 949-50 (9th Cir. 2007).

In *Welch*, the court implicitly held that a plaintiff may conduct discovery in order to show a conflict of interest. In reviewing the district court's determination of attorney's fees, the Ninth Circuit stated that, "[b]ecause an ERISA plaintiff may be permitted to supplement the administrative record with evidence of a conflict of interest on the part of the defendants, ... *some* discovery aimed at demonstrating a conflict of interest may have been appropriate." *Id*. at 949-50 (emphasis in original); *see also Gullidge v. Hartford Life & Accident Ins. Co.*, 501 F. Supp. 2d 1280, 1283 (C.D. Cal. 2007) (citing *Welch* for the proposition that conducting discovery regarding whether a conflict of interest existed is appropriate).

10

Becuase Liberty admits that a structural conflict exists, the Court finds that discovery into the scope of the conflict, as well as discovery regarding the nature, extent, and effect of the conflict on the decision making process is appropriate.  Accordingly, the Court HEREBY GRANTS Horton's motion to conduct discovery.  Nevertheless, the Court reminds Horton that "such discovery must be narrowly tailored and cannot be a fishing expedition." *Groom v. Standard Ins. Co.*, 492 F. Supp. 2d 1202, 1205 (C.D. Cal. 2007).

The Court declines to examine Horton's specific discovery requests.  To the extent the parties are unable to resolve disputes regarding specific discovery requests, pursuant to Civil Local Rule 72-1, the Court HEREBY REFERS this matter to a randomly assigned magistrate judge for resolution of such discovery disputes and for resolution of all discovery matters.

**IT IS SO ORDERED.**

Dated: November 12, 2008

JEFFREY S. WHITE  
UNITED STATES DISTRICT JUDGE

cc:     Wings Hom